Hunt v. Bailey.

*Landlord and Tenant—Rents—Contract.*—Where a tenant for a term of years, or from year to year, holds over and retains possession of the premises after the end of his term and without any new agreement, he will be held to continue under the terms and conditions of the original lease; but where an agreement, express or implied, is made for an increased rent, the larger rent will be payable although the tenant's liability is continued on the terms of the previous lease. Where a tenant is notified by the landlord that if he retain the premises after the end of his term he must pay an increased rent, if the tenant do not express his dissent within a reasonable time he will be held as assenting to the proposed change. In such case it is the duty of the tenant to express his dissent, that the landlord may take the proper steps to recover his possession. By remaining in possession and continuing silent, his assent will be presumed.

*Appeal from St. Louis Court of Common Pleas.*

This was an action to recover rent alleged to be due in the petition from the 10th day of December, 1863, to the 10th day of September, 1864, for the same premises for which rent is sued for in subjoined case between the same parties. The facts in both cases were substantially the same. The subjoined case is to recover rent for the year 1863, at $400 per annum; this suit is for rent for part of year 1864, at the rate of $750 per annum. In both cases the defendant tendered the amount of rent at $300 per annum, which was the original letting. The cause was tried by the court sitting as a jury.

Plaintiff's witness, Patterson, testified that he was agent of plaintiff when the premises were let to defendant; that

he leased it to defendant verbally, at $300 per annum, from the 10th of December, 1861, to the 10th of December, 1862, rent payable quarterly; that the defendant entered into possession. In November, 1862, he gave defendant a written notice, as follows:

"Your year will expire December 10, 1862; I shall ask $400 per annum for the house from that date. Please let me know if you desire to keep it.—November 1, 1862.—H. L. Patterson, agent."

He did not personally serve this notice; it was served by his clerk, Mr. Kernan; he knew that defendant received it. Defendant never said anything about this notice, but continued in possession under the old letting. In August, 1863, he gave the defendant a second notice, as follows:

"St. Louis, August 14, 1863.—Mr. George Bailey—Will please take notice that from and after December 10, 1863, the dwelling-house No. 126 St. Charles street, now occupied by him, will be raised to $600 per annum. He failing to accept the premises on these terms by October 1, 1863, the offer will on that day be withdrawn, and I shall proceed to rent the same to whom I may, without further notice or consultation with him; and if said Bailey shall hold on to the premises (not having accepted the terms as aforesaid), I shall hold him as tenant for one year from December 10, 1863, at seven hundred and fifty dollars per annum, and responsible for all loss or damages sustained by me by reason of any inability to hand over the premises to the party to whom I may have rented the same.— Henry L. Patterson, attorney, &c."

The witness did not serve this notice personally, but gave it to his clerk, Mr. Kernan, to serve after this notice was written; he never had any dissent from the defendant; the defendant continued in possession, and is still in possession.

On cross-examination he said: "I served neither notice personally; the defendant never promised nor agreed to pay the advanced rent; never has paid any advance rent; he has never paid more than at the rate of $300 per annum. I

had a conversation only once with defendant, and in that he refused to pay the advanced rent; cannot say when this conversation took place; this conversation was with reference to the first notice, that is, as to advancing rent from $300 to $400, and he objected to any advance of rent."

On re-examination witness said that this was the only conversation he had had with defendant in reference to increasing the rent, and then he refused to pay any advance.

Plaintiff then called Mr. Kernan, the plaintiff's rent collector, who testified: "I collected the rent for $300 during the first year. I served both of the above notices; the first one I served within two or three days after its date, the second one within five days after its date. I presented bills for rent to defendant for the second and third years; when I presented these bills to the defendant, he always tendered me the rent at the rate of $300 per annum, and declined paying any advanced rent."

On cross-examination witness said: "I did not see defendant when I served the second notice; I left it on the premises, but defendant afterwards told me he received the notice. When I served the first notice, the defendant replied to me as agent of Mrs. Hunt, and as I was not agent I paid no attention to that; so he sent a notice to Mr. Patterson's office. I received a written reply from defendant; defendant always refused to pay any advanced rent, and always tendered the rent at $300 per annum. I was collector of the rent for Mrs. Hunt, and clerk of Patterson. Defendant never promised nor agreed to pay any advanced rent, to my knowledge, and never paid any."

This was all the testimony for plaintiff.

Defendant called Charles Bailey, son of defendant, to whom a paper was shown, and he identified it as the one he served on Patterson at his office. "I left it with Mr. Kernan, at Patterson's office (it being the written reply spoken of by last witness). Defendant read the paper in evidence: 'Mr. R. J. Kernan, agent for A. L. Hunt.—Having said that you intended to raise the rest, I have only to say that I am

unwilling to pay any advance of rent. December 10, 1862. Yours, &c. Geo. Bailey.' Kernan looked at it and said he would give it to Patterson, which he did. I was in my father's office when Kernan presented bills for advanced rent, and heard my father say he would not pay any advanced rent; this was during the second as well as the third year."

On cross-examination witness said: " I gave this notice to some one in the office of Lucas, which was also Patterson's office, to some one who professed to be acting as agent; I never heard defendant say to Kernan he would not pay any advanced rent except when the bills were presented; do not know the amount of bills presented—did not see them."

This was all the evidence heard in the case.

The court, at the instance of plaintiff, gave the following instructions, to which defendant duly excepted:

1. If defendant received the second notice given in evidence, dated August 14, 1863, three months prior to the expiration of that current year, and expressed to the plaintiff no dissent to the terms therein contained until the lapse of three months of the succeeding current year, then defendant has impliedly consented to pay at the advanced rate, and plaintiff is entitled to recover at that rate.

2. The dissent of the defendant to the first notice, or his refusal to pay the advanced rent of $400 per annum, is not evidence on the question of defendant's dissent to the second notice, or his refusal to pay an advanced rent for the subsequent year as contained in said second notice; but the fact, if true, that defendant, in answer to the first notice, refused to pay the increased rent demanded, does not relieve him from liability for failure—if he did fail to dissent from the second notice as to the increase of rent therein demanded—if he received it three months prior to December 10, 1863.

Of its own motion, the court gave the following instruction, to which defendant duly excepted:

1. The court, of its own motion, declares that the question to be decided is whether the defendant impliedly undertook

or promised to pay the increased rent sued for; and if the court find from all the evidence that he did so promise, the plaintiff is entitled to a verdict for the whole amount sued for; if not, the defendant is entitled to a verdict, except as to the amount he admits to be due the plaintiff.

The defendant asked the court to give the following instructions, which the court refused, and the defendant duly excepted:

1. Although the court may find from the evidence that the plaintiff served the defendant with the notice read at the trial, dated 14th August, 1863, and that the defendant thereafter continued in possession of the demised premises, yet the whole evidence in the case is insufficient to support the alleged agreement of the defendant to pay rent at the rate of $750 per annum, set out in the plaintiff's petition.

2. The court, sitting as a jury, is asked to declare the law as follows: that as the plaintiff sues on an agreement to pay rent at the rate of $750 per annum payable quarterly, it is incumbent on him to prove such agreement affirmatively; and the mere fact that the defendant remained in possession of the premises after the expiration of the year, and after the notice dated 14th August, 1863, was left at the defendant's house and received by him, is not sufficient evidence of such assent as to make the defendant liable to said increased rent of $750 per annum.

3. That the refusal of the defendant to pay the increase of rent from $300 to $400 per annum, and the fact that he sent the notice read in evidence to the office of plaintiff's agent, as testified to by the witnesses, rebuts any presumption to accept of the increased rent which might be raised by the defendant's continuance in possession of the premises after the notices read in evidence by plaintiff were served on him.

4. The notice dated the 14th day of August, 1863, which was left at defendant's house by plaintiff, is not a proposition to defendant to accept a tenancy of $750 per annum, but a

mere threat that defendant would be liable to a penalty of $750, and other costs and damages, unless defendant gave notice of accepting tenancy at $600, and that plaintiff would be at liberty to rent the place to other tenants. The defendant was not bound to take any affirmative steps to answer any such notice in order to prevent a liability attaching; and the fact of the defendant refusing to accept the proposed tenancy at $600, in connection with the former declarations by defendant to plaintiff's agent, Hunt, that he objected to any advance in rent, and his written notice to the same effect (in the absence of any affirmative evidence of acceptance except the continuance in possession), rebut any presumption that he acceded to or agreed to payment at $750 per annum.

The court thereupon rendered a verdict against defendant for rent at the rate of $750 per annum.

*McDonald* and *Krum & Decker*, for appellant.

I. The court erred in giving the respondent's instructions, both first and second.

They place the tenant's liability for rent entirely upon the threat contained in the second notice, signed by Patterson, and impose a penalty upon the tenant which is even beyond the penalty imposed by the statute upon a trespasser.

An action for use and occupation lies only where the relation of landlord and tenant exists; where the party in possession is a trespasser, no action for rent can be maintained —O'Fallon v. Boisvenu, 3 Mo. 405; Hood v. Mathis, 21 Mo. 308; Cohen v. Kyler, 27 Mo. 122.

A parol lease for one year to commence in the future is within the statute of frauds and void, and mere entry and payment of rent create a tenancy from year to year—Cromlin v. Theis, 31 Ala. 412; Kerr v. Clark, 19 Mo. 132; Ridgely v. Stillwell, 27 Mo. 128; Tieman v. Johnson, 7 Mo. 43; Hardy v. Winter, 38 Mo. 106; Delano v. Montagu, 4 Cush. 42.

A lease by an agent in his own name is void, and tenant is entitled to three months' notice to quit—Murray v. Armstrong, 11 Mo. 209.

When a tenant continues in possession after the expiration of his term wrongfully, he is not a trespasser but a tenant at sufferance—2 Bl. Com. 150; 4 Kent's Com. 116; Crabb, Law Real Prop. § 1597.

At common law, a tenancy at sufferance could be determined by mere entry of landlord. In this State tenancy at sufferance is determined by thirty days' notice, except where the time expires at a certain date, and then it is determined by action to recover possession without notice.

II. The action for increased rent cannot be maintained in this case, because

(a) Bailey is tenant from year to year, and holds as of right under the original letting until he is served with three months' notice to quit, as required by statute.

A notice to quit must be explicit and unconditional; it must not give the tenant an option of leaving the premises, or entering into a new contract—Comyn on Land. & Ten. 317; Coote L. & T. 367; 1 Washb. Real Prop. 386; Ayres v. Draper, 11 Mo. 548.

(b) There can be no inference of a promise by Bailey of a renting at a price beyond $300 per annum. There was no evidence of such renting, nor circumstances from which it can be implied or adduced.

There must be an acceptance of the offer as made, and a notice of such acceptance, before there is a contract binding on either party. Mutuality is the essence of all contracts—Brown v. Rice, 29 Mo. 323; 1 Pars. Cont. 475.

The continuance in possession is an assent merely to continue as tenant, but, in the face of all the positive refusals, written and oral, preceding, it cannot be tortured into an assent to pay "$750 and all costs and damages."

The cases relied on by respondent (Loft R. 152; Elgar v. Watson, Car. & Marsh. 494; Roberts v. Hayward, 3 Car. & P. 432; Despard v. Walbridge, 15 N. Y. 374) do not in the

least militate against appellant; in none of these cases did it appear that the tenant had positively refused, objected and protested for more than a year against any advance of rent. Besides, the notices in those cases were entirely different; they were offers to continue the tenancy. The second notice is a threat to dissolve the tenancy unless tenant will accept a tenancy at $600 by the 1st October.

But in England, in the case of Jones v. Shear, the question was elaborately discussed, and the idea that by a continuance in possession the tenant must be regarded as consenting to continue the lease even upon the former terms, or upon new terms before that, offered by the landlord, is entirely disapproved. See case reported at different stages in 2 Har. & Wal. 43; 4 Ad. & El. 832; 6 Nev. & Man. 428.

It will be seen by referring to the writers on landlords and tenants that in commenting on these cases the commentators carefully refrain from carrying the doctrine, extracted from Elgar v. Watson and Roberts v. Hayward, to the extent to which the court below extended it in this case — 1 Furl. L. & T. 220; Woodf. L. & T. 522; Archb. L. & T. 154, marg.

*Lackland & Martin,* for respondent.

The appellant was only a tenant by the year; as to any year but the current one he had no right or claim. So far as the succeeding year was concerned, the landlord had a right to exact whatever rent he chose, in the same manner as if the defendant had been a stranger applying for rent of the premises, provided he did this before his tenant had any reason to believe that he might occupy another year at the old rent. The information about the new rent was given to the appellant before he had any reason to believe that he might continue at the old terms, viz., three months before the expiration of his current year.

The relation of landlord and tenant existed all the time— a relation which exacts good faith on both sides. The landlord had the right to demand any rent he chose for the suc-

ceeding year, and the tenant could decline to give it by refusing to extend his tenancy.

A notice that if the tenant remains another year he would be required to pay an increased rent, unless objected to, would bind him to pay that rent if he remained—Loft's R. 153, 4to; Roberts v. Hayward, 3 Car. & P. 432; Woodf. L. & T. 524; Chit. on Cont. 324. See also Despard v. Walbridge, 15 N. Y. 374.

No other conclusion can be reached, for the tenant must be presumed to have elected to stay at the new rent, or be considered a trespasser. The law chooses the first presumption. The law is full of contracts implied from acquiescence and silent consent. If a merchant transmits an account rendered to a person with whom he has had dealings, and the same is not objected to without unnecessary delay, the law raises an implied assent to its correctness—Sherman v. Sherman, 2 Vern. 276; Willis v. Jernegan, 2 Atk. 252; Freeland v. Horne, 7 Cranch, 147; Murray v. Toland, 3 Johns. Ch. 575.

If a tenant receive notice personally to quit on a certain day without objection, it is an admission that his tenancy expires on that day—Thomas v. Thomas, 2 Camp. 647; Doe v. Foster, 13 East, 405; Doe v. Wombell, 2 Camp. 559.

For a tenant to keep silent after a notice of this kind would be an act tending to mislead the landlord, and give the tenant the privilege of taking advantage of his own wrong.

The cases cited by counsel for appellant about a notice to quit necessary to be explicit, are cases *in tort*, not *assumpsit*. The party is not to be regarded as trespasser, because he is presumed to have accepted the condition in the notice to stay, and of course is bound to pay the increased rent in the notice.

To terminate a tenancy from year to year, a notice to quit is not necessary; a declared intention to terminate the tenancy is sufficient—R. C. 1865, p. 739, § 12. The intention in this case is clear as expressed in the notice.

WAGNER, Judge, delivered the opinion of the court.

The law seems to be well settled that when a tenant for a term of years, or from year to year, holds over and retains possession of the premises after the expiration of term, and without any new agreement or stipulation between the parties, he will be held impliedly to continue in the possession under the terms, conditions and covenants in the original lease—Quinette v. Carpenter, 35 Mo. 502; Finney v. Ahern, decided at this term.

It results therefore as a consequence, that in the absence of any new agreement or stipulation, where a holding over is established and the relation of landlord and tenant exists, the law presumes the tenancy to continue according to the terms of the contract which has expired.

But where an agreement either express or implied is made for an increasd rent, the larger rent will be payable, although the tenant's liability is continued on the previous lease. Where a landlord gave notice to a tenant whose term was expiring, that in case he should hold over it would be considered as a taking of the premises for another year at an increased rent, and the tenant made no reply, but continued to occupy the premises, it was decided that the continued occupation was a virtual assent to the terms prescribed in the notice, and created a privity of contract between the parties for the next year after at the increased rent—Despard v. Walbridge, 15 N. Y. 374. If the tenant manifests his dissent from the terms proposed for increased rent, then no privity of contract will be created for the increased rent; and if he holds over, it will be considered on the terms of the lease by which he originally gained possession. In such case, the remedy of the landlord would be ousting the tenant from the possession, under the statute, if he objected to a continuance of the occupation according to the terms and conditions of the lease. The notice in this case was more than three months prior to the expiration of the term, and informed the tenant that if he desired to retain the premises

he could have them at a specified rate, provided he signified his assent by a certain designated day; but if he did not accede to the terms offered and continued to hold, a certain additional rent would be exacted. The tenant made no answer to this notice and held over. When the first quarter had expired and a bill was presented for the increased rent, he objected and tendered the amount according to the terms of the prior contract.

If the tenant objected to the terms increasing the rent, and did not intend to pay accordingly, it was his duty to manifest his dissent within a reasonable time, in order that the landlord might have taken the necessary steps to have acquired the possession and reoccupied the premises, had it been deemed proper to do so. By his continuing in possession and remaining silent, the landlord had the right to construe his silence into an assent or acquiescence and hold him for the increased rent.

The tenant cannot be permitted to reap an advantage by remaining silent when it is his duty to speak.

The judgment will be affirmed.

The other judges concur.

---

ANNE L. HUNT, Respondent, *v.* GEORGE BAILEY, Appellant.

*Appeal from St. Louis Law Commissioner's Court.*

*E. J. Bennett* and *Alex. Martin,* for respondent.

*R. S. McDonald* and *Krum & Decker,* for appellant.