GEORGE W. KERR, Respondent, *v.* E. C. SIMMONS ET AL.,
Appellants.

November 23, 1880.

A failure to surrender leased premises at the expiration of the term is a breach
of the covenant; and a recovery of double rent, under the terms of the
lease, for holding over one month is a bar to a recovery, under the same
covenant, for a second month.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Reversed and remanded.*

J. M. & C. H. KRUM, and W. B. DOUGLAS, for the appellants : A single demand cannot be split up and made the basis of two or more suits. — *Wagner* v. *Jacoby*, 26 Mo. 532 ; *Miller* v. *Covert*, 1 Wend. 487 ; *Secor* v. *Sturgis*, 16 N. Y. 554. A breach of a lease covenant to return the property constitutes but one and an indivisible demand. — *Sir Moil Finche's Case*, 2 Leon. 143 ; *Stein* v. *Prairie Rose*, 17 Ohio St. 472 ; *Bancroft* v. *Winspear*, 44 Barb. 209 ; *Logan* v. *Caffrey*, 30 Pa. St. 106 ; *Simes* v. *Zane*, 24 Pa. St. 242 ; *Booge* v. *Railroad Co.*, 33 Mo. 212 ; *Davis* v. *Maxwell*, 12 Metc. 286 ; *Trask* v. *Railroad Co.*, 2 Allen, 331 : *Pinney* v. *Barnes*, 17 Conn. 420.

THOMAS T. GANTT, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

The plaintiff sues upon a lease, executed by his assignor to the defendants, of certain premises in the city of St. Louis, for the term of five years from the first day of January, 1874, at the yearly rent of $12,500, payable monthly. The lease contained the following covenants : " The said party of the second part, on his part, agrees to pay the rent herein reserved, and double rent for every day they, or any one else in their name, shall hold on to the said premises after the expiration of the term hereby created, or its forfeiture for any cause whatever ; to surrender the

premises to said lessor, his assigns or legal representatives, at the expiration of said term, in as good condition as they received the same, only excepting," etc. The petition alleges that the defendants duly paid the rent during the term, but did not surrender the premises on its expiration; that, on the contrary, the defendants held possession until February 28, 1879; that the plaintiff has sued them in another action for the rent of said premises for the month of January, and now prays judgment for double rent for the month of February. The amended answer denies generally, except as to the suit for January rent, and alleges that the plaintiff recovered therein against the defendants the sum of $2,126.63, and that the action was based upon the same alleged covenant which is here sued upon. No reply was filed. There was a verdict and judgment for the plaintiff. The question for our determination is whether the recovery in the first suit was a bar to the present action.

Questions as to the extent to which a recovery upon part of a claim, or series of claims, will operate to bar an action upon the residue, have sometimes been very difficult of solution. In cases of tort the rule is very simple. Where there has been a recovery of damages on account of a trespass, no new action can be founded on the same wrongful act, even though additional damages may have arisen which did not exist at the institution of the first suit. *Hodsoll* v. *Stallebrass*, 11 Ad. & E. 301; *Fetter* v. *Beale*, 1 Salk. 11. In actions founded on contract the test question generally is, whether the second suit is for a breach of the same or a different undertaking from that upon which the first suit was maintained. There may be in the same instrument several separate promises or undertakings for as many distinct considerations. Thus, in a lease for one year, the rent to be paid monthly, there are twelve separate undertakings of payment, in effect — one for each month of the term. There are also as many separate considerations.

For, while the whole term may be regarded as a general consideration applying to all the payments, yet the occupancy for each month is the distinctive consideration for the payment attaching to that month. It results that the lessor may obtain a judgment for non-payment of the rent for June, but this will not prevent a subsequent recovery for a failure to pay the rent for July. The same rule applies, however, in many cases where the consideration remains the same for successive payments. A note payable in one year, with interest payable semi-annually, comprises two distinct contracts : one to pay the principal sum, and the other to pay the interest. Separate suits may be maintained on the two demands. *Andover Savings Bank* v. *Adams*, 1 Allen, 28. A second action of *assumpsit* may be maintained by a second indorser against the first indorser of a note, for moneys paid on account of the note, after a former action and recovery for moneys previously paid. *Wright* v. *Butler*, 6 Wend. 284. Here the liability arises upon an implied request by the first indorser, growing out of his legal liability to indemnify the second for any payment he may be required to make. But as no such request can be implied for the second indorser's benefit until he has actually made a payment, it is obvious that for each payment there is a separate *assumpsit*. Hence the second suit, although arising out of the same transaction, is not upon the same contract as the first. In *Secor* v. *Sturgis*, 16 N. Y. 548, the business of ship-carpenters was carried on in one part of a building, under the direction of two of the parners in a firm, and the business of ship-chandlers in another part of the same building, under the direction of a third partner. Separate books of account were kept by different clerks in the two branches of business. The defendants contracted indebtedness in each department on account of the same brig. After a judgment obtained on one account, suit was instituted upon the other, against which the previous recovery was set

up as a bar. The defence was overruled, on the distinct ground that the two claims, although concurrent in point of time, were founded upon separate contracts or causes of action. These cases will serve to illustrate a universal test of the divisibility of rights of action, whether upon concurrent or successive grounds of complaint. An application of this test to the case of a contract which is single, determinate in itself, and therefore indivisible, will exemplify a different result.

It is sometimes said that if the cause of complaint in a second suit might have been included in the first, but was not, the second action will be barred by a judgment in the first. *Bagot* v. *Williams*, 3 Barn. & Cress. 235. But it does not follow that a second action may always be maintained when the cause of complaint could not be introduced into its predecessor. This fact, as we have already seen, is verified in actions founded in tort. In actions of contract the bar will be complete whether the cause of complaint could or could not have been included in the first proceeding, if only the second be an attempt to enforce the same contract or undertaking. Thus, in *Fish* v. *Folley*, 6 Hill, 54, the defendant's intestate had covenanted, in 1822, to furnish the plaintiff with sufficient water, under certain limitations and exceptions, to carry the plaintiff's fulling-mill and carding-machine. In January, 1835, the plaintiff sued for a continuous breach of the covenant, dating from 1826, and got judgment. In 1840 he again sued on account of a continuous omission to supply water since 1835, claiming that this was a new breach, which could not be included in the former suit. It was held that, the contract being entire and the same, a total breach put an end to it, and to allow a second recovery "would be splitting up an entire cause of action, in violation of established principles." In *Stuyvesant* v. *Mayor*, 11 Paige, 414, the complainant had granted to the corporation of the city of New York certain lands for the purposes of a

public square, the city covenanting that such lands should forever be used and appropriated for the purposes of a public square exclusively, and that the corporation would immediately proceed to regulate the lands granted, and would enclose and improve the same in a specified manner. It was held that "the covenant to grade and enclose and improve the premises was not a continuing covenant, but a covenant which was to be performed within a reasonable time ; and that a recovery in an action for the breach of that covenant, brought after the expiration of a reasonable time to perform the same, was a bar to any further recovery of damages for the breach thereof, and was also a bar to a suit in equity for the specific performance of such covenant.''

It must here be observed that there is a clear distinction between a continuing covenant and a continuous breach, or several breaches, of a single and determinate covenant. In the first, an idea is involved of as many contracts as there are successive violations, since the continuing covenant only repeats itself for every successive period of which a breach may be predicated. It thus resembles somewhat an open account, in which, while each delivery creates an additional demand, a suit for the whole proceeds upon a single implied agreement that an account may be opened and continued either for a definite period or at the pleasure of one or both of the parties. *Secor* v. *Sturgis*, 16 N. Y. 558. The plaintiff must include all the items that have accrued up to the commencement of his suit. Yet he may afterwards sue for items that accrue subsequently, the second suit not being founded on the original agreement, but on an implied renewal or repetition of it. In the case of a single and determinate covenant, the judicial ascertainment of a breach puts an end to its vital and suable force as effectually as is done in the case of a recovery for an assault and battery. If such a covenant was the ground of action upon which the plaintiff in this case obtained his judgment for the Jan-

uary double rent, then that judgment operated a complete bar against the present suit.

A case which bears a striking analogy with the one before us is that of *Stein* v. *Steamboat Prairie Rose*, 17 Ohio St. 471. The contract was in these words: "I have this day hired barge Mary Jane, of Albert Stein, for the sum of ten dollars per day, until delivered back in Cincinnati, in like good order as received." This was dated August 13, 1862. On January 1, 1863, Stein sued for the hire of the barge up to that date, and obtained judgment. On February 15, 1864, he sued for the barge-hire from January 2, 1863, to July 22, 1863, at which last date he repossessed himself of the barge. The court held that the contract was entire, and not divisible; that, as no time was specified for the return of the barge, it was to be returned within a reasonable time; that by suing in January, 1863, the plaintiff in effect averred that the reasonable time had expired, and the whole debt became due; that he then exhausted his remedy on the entire contract, and the action thereon could not be sustained.

If we could treat the defendant's undertaking, in this case, to pay double rent *per diem* for occupancy after the expiration of the term as a continuation in modified form of the covenant for monthly payments during the term, there would be no difficulty in holding that successive suits might be maintained, if not daily, at least monthly, for every day's occupancy on those terms. But this would be utterly inconsistent with the foundation of the present suit. There is here no continuing covenant for occupancy by the lessees in consideration of their periodical payments. On the contrary, the covenant is for a surrender of the premises. In this there is nothing of which it can be said that there is a succession of undertakings mutually agreed upon. The lessor does not agree to the continued occupancy, but stipulates against it. The occupancy is in itself a breach, and the specified *per diem* is simply an agreed measure of

damages. The covenant thus broken is single and entire. It relates to a single act, viz. : the redelivery of the premises by the lessees to the lessor. In one particular, the case here presented is stronger than the barge case above mentioned. There, the agreement fixed no time for a breach of covenant by failure to return the barge, and it became necessary to supply the omission by implication of a reasonable time. But here the time is distinctly fixed at the expiration of the term. When that occurred, the failure to surrender constituted a total breach. When the plaintiff sued and got judgment because of it, he exhausted his remedy as to that covenant. There was no continuing or renewed covenant upon which to sue for the subsequent *per diem* demands. There was nothing to sue for, unless for additional damages or additional breaches of the same undertaking; and this, as we have shown, is never to be permitted. The judgment is reversed and the cause remanded. The other judges concur.

LEWIS, P. J., delivered the opinion of the court on a motion for a rehearing.

It is not questioned that when a tenant holds over after the expiration of his term he may be held by the landlord to a continuing responsibility according to the terms of the former lease ; nor that, under such circumstances, in the absence of any agreement or stipulation, the law will presume the tenancy to continue according to the terms of the contract which has expired ; nor that, if the landlord has given notice to the tenant, before the expiration of the term, that if he shall hold over he will be chargeable at a higher rate, and the tenant makes no response, but holds over, his silence will imply an assent to the terms proposed by the landlord, and he will be bound accordingly. These propositions cover all that is decided in *Hunt* v. *Bailey*, 39 Mo. 257, which is cited in support of this motion as " a controlling decision to which the attention of the court has

not been directed." But, unfortunately for the plaintiff's claim, neither the propositions nor the decision, as we understand them, have any application to the present case. All the decisions referred to in this connection, in the able argument of plaintiff's counsel, are founded upon the continuing relation of landlord and tenant after the expiration of the term, by expressed or implied agreement of the parties; arising either upon distinct and settled terms to that effect, or upon the exercise of an option, existing in one party or the other, to proceed and declare upon that continuing relation.

The fundamental error in the argument before us lies in the assumption that the defendants had an option to surrender the premises or to hold them at the increased rent, with the deduction that their holding over was such an exercise of the option as entitled them to be treated still as tenants after the expiration of the lease. But where, in this record, do we find such an option in the defendants? Certainly not on the face of the lease; for there it is expressly stipulated that the lessees shall surrender the premises at the expiration of the term. It will not be denied that under this stipulation the landlord could have ousted the tenants on any day after the end of the lease. How, then, could there be an option in one party to stay or not to stay, when the other party might compel him to leave? In some of the cases cited, an option was created in the tenant by express proposal from the landlord, who thus waived his right to eject, upon terms which were accepted by the tenant. In others, the landlord's consent, express or implied, to the continued occupancy introduced the element of agreement, which is always essential to the relation of landlord and tenant; and so, the only question before the court was as to the constituents of the agreement, and how far they were to be discovered in the terms of the original lease. In every one of the cases cited to show that the present plaintiff might treat the defendants as his contin-

uing tenants, the element of agreement, actual or presumed, is visible as the foundation upon which the proposition must rest. But in the present case this element nowhere appears upon the record. On the contrary, the petition declares that the defendants " did not, *though requested to do so by the plaintiff*, surrender the said premises to the said plaintiff at the expiration of the said term ; but, on the contrary thereof, did withhold from said plaintiff the possession of said premises ;   *   *   *   and plaintiff says that for withholding from said plaintiff the possession of said premises   *   *   *   the defendants are liable to pay him," etc.  Thus, the petition distinctly shows that the occupancy was *against* the plaintiff's consent, and was, therefore, not the occupancy of a tenant, but that of a trespasser.  It shows, moreover, as plainly as words can put it, that the plaintiff sues, not in the capacity of a landlord who seeks to recover for rent in arrear, but in the capacity of a covenantee who has been damaged by the defendant's breach of covenant in refusing to surrender property at the stipulated time.  The petition in the first suit is even more explicit.  It says that the defendants " did not surrender said premises to the said plaintiff at the expiration of said term ; but, on the contrary thereof, did hold on to the same thereafter, and during the whole month of January, 1879, *against the will of the said plaintiff* to the said defendants declared.  Whereby the said defendants *broke their said covenant*, and became liable to pay to the plaintiff," etc.  Here the alleged breach is not the failure to pay rent.  The liability to pay is stated as a result only of the breach previously declared.  In a suit for rent in arrear, the failure to pay is always set forth as in itself the breach of the covenant or agreed stipulation.  But in both these petitions the breach declared upon is a totally different act or omission, and the money claim which follows is a mere statement of the consequential liability in damages to an equal amount.  The plaintiff waives his right to sue as a landlord

pursuing his delinquent tenants; and having once sued and recovered for the breach of a single and specific covenant, he cannot, according to the authorities, now sue for a subsequent breach of the same covenant. He might have declared, in the first instance and in the second, upon an implied permissive occupancy after the term, conditioned upon the payment of double rent, according to the lease. But this he has not done. He distinctly denies any such permissive occupancy, and alleges a wrongful possession which is inconsistent with the relation of landlord and tenant.

The motion for a rehearing is overruled. Judge HAYDEN concurs; Judge BAKEWELL is absent. -